**JOSTENS, INC., Respondent,**

v.

**CNA INSURANCE/CONTINENTAL CASUALTY COMPANY,**
**Appellant.**

**No. C6–86–2.**

Court of Appeals of Minnesota.

April 29, 1986.

Review Granted June 30, 1986.

Mark M. Nolan, Stapelton, Nolan & McCall, St. Paul, for respondent.

Bradley M. Jones, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN, and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Underlying this appeal is settlement of a class action sex discrimination suit brought against respondent corporation. For release of claims, respondent paid in excess of $2.3 million. Appellant secondary insurance carrier was subsequently ordered to reimburse respondent for the settlement payment. Appellant challenges that order, claiming the trial court erred in (1) determining its defense of late notice of the underlying claim was already litigated, (2) refusing to order allocation of certain costs of settlement and defense to respondent, and (3) applying prejudgment interest.

## FACTS

Diana Nagy was hired by respondent Josten's, Inc. in June 1973. She resigned in July 1974 because of alleged sex discrimination in promotion and compensation. On September 28, 1974, Nagy filed a corresponding claim with the Equal Employment Opportunity Commission (EEOC) which was deferred to the Minnesota Human Rights Commission (MHRC). On June 3, 1975, the MHRC issued a finding of probable cause regarding respondent's alleged discrimination. On September 26, 1977, Nagy received a notice of right to sue letter.

On December 17, 1977, Nagy sued respondent in federal court. Jostens, Inc. tendered the suit to Federated Insurance Co., its comprehensive general liability carrier. Federated Insurance denied coverage and respondent tendered the suit to its umbrella coverage carrier appellant CNA Insurance/Continental Casualty Co. on January 6, 1978.

On February 24, 1978, appellant by letter to respondent denied coverage stating (1) respondent failed to provide appellant appropriate notice of the underlying complaint, (2) the allegations regarded discrimination which would be beyond policy coverage, and (3) because it appeared respondent had violated the Constitution, indemnification would violate public policy. By order on November 6, 1979, the federal court certified Nagy's complaint as a class action.

In January 1980, respondent brought a state declaratory judgment action against appellant seeking determination appellant owed respondent coverage under its umbrella excess third party liability policy or, in the alternative, had a duty to defend. In July 1980, respondent amended its complaint to request costs, disbursements and attorney fees. On July 30, 1980, the first trial court granted respondent's summary judgment motion. The trial court stated respondent was entitled to its own counsel and to reimbursement from appellant for reasonable attorney fees. The Minnesota Supreme Court affirmed without written opinion on June 8, 1981.

Respondent moved for payment of its attorney fees incurred in defending the Nagy claim through July 1981. By order of April 7, 1982, a second trial court directed appellant to pay $286,704 for reasonable legal fees with interest from November 1, 1981, stating:

> The Court can find no factual or legal basis for defendant's present position that it will pay a portion of those fees, but not all of them, on the apparent theory that some of the plaintiff's claims may be groundless, some claims may fall outside the actual coverage of CNA and

even that some of the depositions taken were really not necessary.

Were the Court to follow these arguments, very few defense counsel would continue to bill their clients for professional services necessarily rendered.

Respondent moved for, and was granted, an amended order awarding prejudgment interest from the date respondent paid the legal fees.

On July 22, 1983, the Minnesota Supreme Court vacated the amended order and reinstated the April 7, 1982 order. Prejudgment interest was reset to begin on the date appellant received notice of the attorney fees owed. The court agreed attorney fees should not have been apportioned, but should be entirely appellant's responsibility. *See Josten's, Inc. v. CNA Insurance,* 336 N.W.2d 544, 546 (Minn.1983).

In May 1984, a settlement between respondent and the named members of the class alleging discrimination was reached. Respondent agreed to pay (1) $1.1 million in damages for unintentional conduct, (2) $100,000 into a fund to provide scholarships to class members or their children, (3) $1 million for private plaintiff counsel fees and costs, and (4) interest on scholarship funds, attorney fees and costs beginning March 30, 1984, all for release of liability regarding the underlying sex discrimination suit. Total amount of the settlement payment was $2,372,039.40. On September 21, 1984, the class action suit against respondent was dismissed by the federal court with prejudice. Respondent paid the class action plaintiffs $1,186,019.40 on November 26, 1984 and $1,186,020.00 on December 3, 1984.

Respondent subsequently moved for an order directing appellant to reimburse respondent for the settlement payments. By order filed October 30, 1985, the third trial court ordered judgment against appellant for the amount of the settlement plus prejudgment interest from November 30, 1984. In its memorandum, the trial court stated the June 1980 trial court order precluded relitigation of the notice issue and the federal court's September 1984 order precluded relitigation of the settlement's reasonableness. Appeal is made from the October 30 order.

## ISSUES

1. Did the trial court err in concluding appellant was barred from asserting a late notice defense?

2. Did the trial court err in concluding reasonableness of the settlement was already determined?

3. Did the trial court err in awarding prejudgment interest?

## ANALYSIS

1. Appellant claims respondent's failure to provide timely notice of Nagy's claim provides a bar to coverage. It asserts the issue has not been decided by previous litigation and therefore appellant should be permitted to demonstrate prejudice suffered by delay.

Respondent argues the notice issue was decided by the July 1980 trial court order and subsequent supreme court affirmance. It asserts relitigation is barred by either law of the case or res judicata doctrines.

In July 1980, appellant argued lack of notice served as a bar to its duty to defend. The trial court ordered appellant did have a duty to defend, but did not expressly discuss the notice defense. Respondent argues "the duty of notice is the same with regard to the duty of coverage as it is to the duty of defense." Respondent claims the 1980 trial court determined lack of notice did not bar a defense duty, and coverage duty still existed. The 1985 trial court agreed.

Appellant relies on the supreme court's language used in affirming the 1980 trial court. It stated:

This affirmance does not preclude the consideration of any issues not decided by [the 1980 trial court's] Order of July 30, 1980, on any subsequent appeal.

Appellant claims the notice issue was preserved for future consideration, stating "[t]here was no other issue left undecided

that had not been addressed specifically by [the 1980 trial court's] Order." Respondent argues the supreme court was referring to the issue regarding whether the involved insurance policy provided coverage for intentional as well as unintentional acts of discrimination.

█ It is not certain what was intended by the supreme court's language. Regardless of whether the issue is barred, we find respondent's notice was not untimely.

Nagy filed with the EEOC in September 1974. She sued respondent in December 1977. At that time, respondent tendered the suit to its general liability carrier which denied coverage. On January 6, 1978, the suit was tendered to appellant.

The pertinent section of the involved insurance policy states:

Insured's Duties in the Event of Occurrence; Claim or Suit;

a) Whenever the insured has information from which it is reasonable to conclude that an act or omission involves injuries or damages which are likely to involve this policy, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. *Failure to notify the company of any act or omission which at the time of its happening did not appear to involve this policy, but which at a later date would appear to give rise to claims, hereunder, shall not prejudice such claims.* With respect to Coverage B, the named insured shall promptly take at his own expense all reasonable steps to prevent additional injuries or damages from arising out of the same or similar conditions at the same location, but such expense shall not be recoverable under this policy.

(Emphasis added). Events occurring prior to the underlying carrier's denial of coverage and defense could not reasonably be interpreted as involving the umbrella coverage policy with appellant. Because we find respondent's notice not to be untimely, we do not reach appellant's arguments regarding prejudice.

█ 2. Appellant claims settlement payments and defense costs should not be borne entirely by appellant. It asserts payments and costs should be prorated between itself and respondent based on actual policy coverage.

Appellant claims the trial court erred in concluding it was precluded from challenging the reasonableness of the Nagy settlement. Settlements should be demonstrated as reasonable and prudent. *See Miller v. Shugart,* 316 N.W.2d 729, 734–35 (Minn. 1982). The trial court stated the federal court's approval of the settlement determined its reasonableness.

The 1985 trial court relied on the federal court's findings in reaching its conclusion. The federal court order stated:

This has been a full-blown adversarial proceeding, with arms' length negotiation; there is no suggestion of collusion or inappropriate compromise.

*     *     *     *     *     *

The settlement is fair, adequate and reasonable as required by Rule 23(e) of the Federal Rules of Civil Procedure.

The trial court also stated independent grounds to support its finding of reasonableness. First, respondent "advanced its own money to pay the *Nagy* claimants." Second, distribution of settlement monies is irrelevant in evaluating reasonableness. Reasonableness is determined by the settlement's amount.

We agree the settlement with the *Nagy* claimants has already been determined. To challenge the federal court's order would constitute a collateral attack.

█ 3. Appellant claims the trial court erred in awarding prejudgment interest from November 30, 1984. It argues the supreme court's July 1983 opinion decided

prejudgment interest would not apply to the facts of this appeal. That opinion involving prejudgment interest on the payment of attorney fees held interest could not be awarded until tender of the legal fees billing to appellant. *Jostens*, 336 N.W.2d at 546. Respondent has submitted letters indicating notice to appellant of the settlement figure as early as June 1984. Respondent did not actually make a payment until November 1984. *See* Minn.Stat. § 549.09 (1984). The trial court did not err in awarding prejudgment interest.

## DECISION

Respondent's notice to its secondary liability insurer was not untimely. Reasonableness of settlement has been previously determined. Prejudgment interest was properly awarded.

Affirmed.